GARRY GOODRICH v. BELA HUBBARD AND JOHN E. KING.

*Exceptions to confirmation of referee's report—Contract inter alios—Construction of logging contract— Prevention of performance —Measure of damages.*

Where exceptions are taken to a referee's report and are overruled and error is assigned on the confirmation of his finding of law, the only questions raised are upon the exceptions to his conclusions of law.

Where one of the parties to a contract sues the other for preventing its performance, a prior contract, made by the defendant with a third person, can have no bearing unless it appears from the contract in suit that it was made with reference to the prior contract.

A contract should be construed in the light of what it expresses in terms, and what is necessarily implied therefrom.

A logging contract after providing that the logger should "have and deliver all of said logs this winter next ensuing, if weather will

permit" stipulated that "If weather unfavorable, and all the logs cannot be hauled the first winter, this contract shall be continued to another winter, on same terms and conditions." *Held,* where such preparations had been made as would be proper for an average winter, and the logger had made all reasonable efforts to do the hauling but there was so little snow and frost that it could not be done on sleds, in the usual way, that the logger was entitled to postpone what remained undone to the next winter, and the other party to the contract had no right to terminate the contract by taking possession of the logs and removing them.

The measure of damages for preventing the performance of a labor contract may include the loss of profits if there is no uncertainty as to what they would have been; and if plaintiff does not elect to consider the contract broken before the time for full performance has expired, and the cost of doing the work has meanwhile fallen, he is entitled to recover what difference there is to his advantage.

Error to Lapeer. (Stevens, J.) April 27.—June 20.

Assumpsit. Defendants bring error. Affirmed.

*John Atkinson* and *Isaac Marston* for appellants. In giving damages for loss of profits caused by the prevention of the performance of a contract the profits must be ascertained as of the day of the breach of contract by the party so preventing its performance : *Masterton v. Mayor* 7 Hill 61 ; *Rittenhouse v. Mayor* 25 Md. 336; *Vischer v. Railroad Co.* 34 Ga. 536 ; unless the prevention is by the wrongful act of the defendant : *Burrell v. N. Y. & Sag. Salt Co.* 14 Mich. 37; and if the profits cannot be computed with certainty, prospective profits cannot be included in the award made : *McKinnon v. McEwan* 48 Mich. 108 ; *Allis v. McLean* id. 432.

*Geer & Williams* for appellee. A referee's findings of fact are conclusive where they have been confirmed and judgment rendered on them, and the case is taken up only on exceptions to the report : *Bevier v. Wright* 30 Mich. 484 ; *St. Denis v. Saunders* 36 Mich. 369 ; evidence embodied in the report is not part of it and will not be considered for the purpose of determining whether the findings should

have been different: *Peabody v. McAvoy* 23 Mich. 526; all reasonable intendments will be made to support the finding: *Nieb v. Hinderer* 42 Mich. 451; in an action for damages for preventing the performance of a contract, there may be a recovery of such profits as plaintiff might have made if he had been allowed to perform it, and in estimating damages the character of the season may be considered in its relation to the opportunities it affords for its fulfilment: *Royalton v. R. & W. Turnpike Co.* 14 Vt. 311; *Salvo v. Duncan* 49 Wis. 151; *Loud v. Campbell* 26 Mich. 239.

SHERWOOD, J.  This is an action of assumpsit to recover damages of defendant for an alleged breach of contract, in preventing plaintiffs from hauling and delivering a quantity of pine saw-logs.  The contract is as follows :

" This contract, made this 25th day of October, A. D. 1879, between Garry Goodrich, of Arcadia, Lapeer county, Michigan, of the first part, and Bela Hubbard and John E. King, of Detroit, Michigan, of the second part, witnesseth : That the party of the first part agrees to haul all the pine saw-logs that party of the second part may own on section twenty-one (21) in said town of Arcadia, to Long lake, in said section eighteen (18) and nineteen (19) in said town, and deliver them in the south boom of Henry Stephens, and to do it in such manner as will be satisfactory to said Henry Stephens, for the sum of one dollar per one thousand feet, and to put on good and sufficient force of men and teams to haul and deliver all of said logs this winter next ensuing, if weather will permit.  And the said party of the second part agrees to skid said logs in a workmanlike manner, and to make the roads to the same, and to skid said logs as well as said Stephens skids his logs, on section twenty (20) and to make the roads as good as the lumber roads of said Stephens, in section twenty (20) and to furnish the logs as fast as first party can haul them, and to pay the party of the first part one dollar per thousand feet for the logs delivered on Long lake, as above specified.  Payments shall be made as fast as 500,000 feet are so delivered, and according to the scale bill of said logs as sold by parties of second part to said Henry Stephens.  The place and facility for delivering said logs on Long lake to be furnished by parties

of second part shall be as good as for delivering the logs of said Henry Stephens from section twenty (20) all logs hauled to be paid for in the spring. If weather unfavorable, and all the logs cannot be hauled the first winter, this contract shall be continued to another winter, on same terms and conditions. No logs to be hauled over twenty-four feet long.

[Signed]　　　　　　　　　　GARRY GOODRICH.
　　　　　　　　　　　　　　HUBBARD & KING.
By G. W. McELHENNEY."

The declaration states a prior contract concerning the cutting, hauling and delivering by plaintiff of other logs, as in force between the parties at the date of the above-recited contract, which was canceled by the parties, as appears, at or about the time of entering into the above contract, and there is no claim of damages on account of it, and it needs no further consideration.

The case, upon stipulation of the parties, was ordered referred to James McNamara, as referee, and his report was confirmed, and judgment rendered for plaintiff. The case is here upon errors assigned, on the confirmation by the circuit court of the referee's finding of law. No exceptions were taken to rulings on the trial before the referee, but exceptions were filed in the court below to the referee's report, which were overruled by the court; and accepting his findings of fact as conclusive, we can only consider the question upon the exceptions to his conclusions of law, and the decision of the circuit court upon the exceptions.

The fact of the making of the contract which is the subject of this suit, is not questioned; and the question in issue upon the pleadings and the defendant's notice under his plea of the general issue, is whether the defendants are liable in damages for a breach of it. The referee's findings of fact which are material, are, substantially stated, as follows :

The winter of 1879 and 1880 was, for the purpose of hauling logs on snow and ice, most unfavorable. The first fall of snow, sufficient for any logs to be moved upon, occurred about Christmas or a little before, and only then

continued a few days,—about eight days,—and the frost was of very little account. Another little flurry of snow occurred in February of that winter, when, it was in evidence, some lumbermen put in five days, or rather nights, at that time, in hauling. The rest of the winter there was neither frost nor snow.

The quantity of logs to be hauled by the plaintiff was 3,618,-000 feet, to move which to Long lake, calculating upon an ordinary season, which would be about six weeks of frost and snow, required him to provide a force of about 30 teams and take advantage of the first sufficient fall of snow, which this winter occurred, as stated, about Christmas time. Plaintiff had equipments for 30 teams; had arranged for 30 teams including his own, to haul logs, to come as soon as the roads were in condition to haul logs upon the snow. The plaintiff came on to do the hauling two or three days after this first snow had fallen, in the latter part of December, with six teams, and hauled with these six teams as long as it was practicable to haul with sleighs. The road was built by defendants over a line selected by plaintiff, and for about 70 rods of the distance ran through a swamp. The balance of the way, a mile and a quarter and upwards, was over hard land, and it connected with the lumber road of Henry Stephens running thence to Long lake; and this road was not graded by defendants until after the first fall of snow, or about the time plaintiff came on to do the hauling.

The work of the plaintiff was in the nature of breaking roads preparatory to hauling, and done in the usual mode of practical lumbermen, and the number of teams he employed was as many as would ordinarily be employed in the breaking of roads to perform a similar job. Only two teams of the number plaintiff had arranged for came at this time, and the roads were so broken up that these teams returned without hauling any logs. The plaintiff at this time hauled in all about 67,717 feet, and spent in doing it not to exceed five days.

In consequence of the condition of the weather, there being but little frost in or snow on the ground, after the road

over which said logs had to be hauled had been graded by defendants, plaintiff used all reasonable efforts and means to perform his contract in the winter of 1879 and 1880; by hauling the logs on sleighs. The plaintiff did no more under the contract than is here stated.

The amount of logs to be hauled, if measured in the winter or spring of 1879 and 1880, would be 3,618,000 feet; if the logs remained in the woods over summer, the sap would become discolored and the measurement would have to be made inside the sap, which would be a depreciation of twenty per cent., and would reduce the measurement to 2,894,400 feet of logs, and there was a risk of further depreciation by being eaten by worms and injured by fire.

The plaintiff could deliver the logs in Long lake in the winter of 1880 and 1881 for fifty cents per thousand feet, it being an extraordinarily favorable winter for lumbering. Defendant had something like a million feet of logs cut in the latter part of December, that year, and kept a force of men there cutting and skidding till some time in March following, when the cutting was complete, and the whole amount of logs cut was 3,618,000 feet.

Some time in March defendants notified plaintiff to haul the logs to Long lake, to save them from depreciation. The plaintiff refused, as they could not be hauled on sleighs, and claimed to defendants that he had a right to wait until the following winter under his contract, and he forbade the defendants removing them. In order to provide against the contingencies of depreciation in measurement and the risk of being eaten by worms and of being burned by fire, defendants went immediately to work and put said logs into Long lake, at an expense to them of $2.50 for hauling.

The defendants gave notice under their plea that they will show that they entered into the contract in question for the purpose of fulfilling a contract previously entered into by them with one Henry Stephens, to deliver to him the pine logs aforesaid, and that plaintiff agreed and bound

himself to perform his contract in such a manner as to
enable defendants to carry out their contract with Ste-
phens, etc. ) The referee finds as a fact that such a contract
with Stephens, which he sets out in full in his return, was
made by defendants.   But there is no finding that this con-
tract was made with reference to the fulfillment by defend-
ant of the Stephens contract, and the evidence before him,
to-wit, the contract in suit, and which must be taken to
express the whole contract of the parties, would not author-
ize such finding.   In our opinion this Stephens contract as
entered 'into by the defendants, alleged as preparatory and
subsidiary to the fulfillment of the principal one with the
plaintiff, should be laid entirely out of view, and cannot be
considered as material or pertinent on the question of the
recovery of damages for the alleged breach of the prin-
cipal contract.   *Masterton v. Mayor of Brooklyn* 7 Hill 72.

The questions for review, then, are irrespective of de-
fendant's contract with Stephens. / The referee finds as
conclusions of law: 1st. By the terms of the contract of
October 25, 1879, the plaintiff had a right to haul said logs
in the winter season, when there should be snow on or
frost in the ground suitable to make roads to move said
logs on sleighs ; and there being no favorable weather to
make suitable roads to haul said logs in the winter of 1879
and 1880, the plaintiff had until and during the winter of
1880 and 1881 to haul said logs under and by virtue of said
contract.

It is urged that the facts found do not support this con-
clusion.   The contract is to be construed upon what it
expresses in terms, and what is necessarily to be implied
from those terms.   It is urged that the contract is silent
upon the subject of snow and frost ; and this is true. But the
contract is to be construed in the light of what was the un-
derstanding of the parties respecting the manner the logs
should be moved.   The contract provides that the plaintiff
shall deliver all of said logs " this winter next ensuing, if
weather will permit.   *   *   *   If weather unfavorable,
and all the logs cannot be hauled the first winter, this con-

tract shall be continued to another winter on same terms
and conditions." Now it seems quite clear to us that both
parties had in mind, and were in accord, that the logs were
to be moved on sleighs, which require snow and a degree
of frost for their use; else the provision of the contract
that if the weather of the first winter is unfavorable, so
that the logs cannot be hauled, the contract may be extend-
ed to the next winter, is a senseless one.   If they were not,
as understood by the parties, to be aided by the advantages
of snow and frost, then there was no reason why they
should, but many reasons why they should not, continue
the contract to the next winter.   The facts found support
this conclusion of law.

That the defendants had no right to terminate said con-
tract by entering upon said land and removing therefrom
said logs before the time had expired in which the plaintiff
had the right to haul them, and that the plaintiff has
sustained damages by being prevented by defendants from
the fulfillment and performance of said contract in the
winter of 1880 and 1881, are the second and third conclu-
sions of law found by the referee.

As to the fact found by the referee that plaintiff used
all reasonable efforts and means to perform his contract in
the winter of 1879 and 1880 by hauling the logs on sleighs,
and that, except the few days in the latter part of Decem-
ber, 1879, and a flurry of snow in the following February,
there was neither snow on nor frost in the ground for the rest
of that winter, and that in the spring of 1880 defendants,
against plaintiff's consent, themselves commenced to put,
and did put, before the winter of 1880 and 1881, all their
remaining logs into Long lake.   They support these con-
clusions.   These conclusions must stand.

The 4th and last conclusion of law relates to the damages
which plaintiff should recover.   The fact is found that
plaintiff, in the winter of 1880 and 1881, could have deliv-
ered said logs at fifty cents per thousand feet.   The objec-
tion is that the measure of damages adopted by the referee
is erroneous.   The damage reported by the referee was for

the loss of profits, the direct and natural result which the
law presumes, springing right up under the breach of the
contract complained of, in plaintiff not being allowed to
fulfill his contract the second winter, on the basis of what
the cost to him would have been for delivery.   From the
facts found the profit to him would have been fifty cents·
per thousand feet for the whole amount not delivered in
the winter of 1879 and 1880.    It is objected that the
profits must be ascertained on the day of the breach ; that·
to attempt to ascertain the damages in any other way would
be speculative, uncertain and conjectural.    The case of
*Masterton v. Mayor of Brooklyn* is cited as authority, but
an examination of that case shows that the court made the·
market price on the day of the breach of the contract to
govern in assessment of damages to depend upon the
opposite party having elected to consider the contract
broken before the arrival of the time for full performance.
The facts of this case were somewhat exceptional, there·
being a claim for a breach of a contract running through a
period of five years, of which about one year and a half
only had expired, the court and jury having no certain
data upon which to estimate the profits for the remaining
three years and a half.    That case is not applicable here,
where the election of the plaintiff to consider the contract
broken before arrival of the time for its full perform-
ance does not appear ; and upon the facts found it does
appear that there are certain data for estimating the dam-
ages found.    The consideration of profits cannot be sep-
arated in this case from the circumstances under which
the work was to be done, and the prevention of which
constitutes the breach making the defendants liable.

There is no element of uncertainty regarding the profits
the plaintiff would have realized from the performance of
the contract, and which must govern in the estimate of
damages.    There are no contingencies modifying or taking·
this case out of the rule laid down by this Court in the case·
of *Burrell v. New York & Saginaw Solar Salt Co.* 14

Mich. 34. See also *Loud v. Campbell* 26 Mich. 239 ; *Mc-Kinnon v. McEwan* 48 Mich. 106.

There was no error in confirming the conclusions of law found by the referee, and the judgment rendered at the circuit is affirmed with costs.

The other Justices concurred.