ROBERT RAYBURN AND FRED W. RAYBURN v. ANDREW W. COMSTOCK ET AL.

[Case No. 1.]

*Logs and logging—Contract—-Breach—-Measure of damages—Evidence.*

1. Where, after one year's operations under a logging contract, the contractors are notified by the land-owners not to cut any more timber, and are refused the supplies agreed to be advanced to enable them to perform the contract, they have the right to seek other employment upon the strength of such notice and refusal, which they cannot be forced to abandon by a subsequent notice from the land-owners to proceed at once and perform the *first* contract.

2. Where, in such a case, the land-owners proceed to cut a portion of the timber themselves, and let the contract to a third party to remove the remainder, the contractors are fully justified in treating the contract as broken by the land-owners, and may recover damages for its breach the same as if no notice to proceed had been served upon them.

3. In a suit for the breach of a logging contract by being prevented from cutting and removing the timber, the difference between the cost of such cutting and removal and the contract price is held, under the testimony in this case, to be a proper measure of damages.

4. Evidence of what it is worth to perform certain labor is inadmissible where both parties claim that it was performed under a parol contract, and only differ as to the contract price.

Error to Alpena. (Simpson, J., presiding.) Argued April 22 and 23, 1890. Decided May 2, 1890.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*Turnbull & Dafoe,* for appellants, contended:

1. If after a promisor has notified the promisee that he will not allow him to complete the contract, and before damages have

accrued to the promisee, or before he elects to treat such notice as a breach, the notice is recalled and consent given to such performance, no damages can be recovered by the promisee; citing 3 Am. & Eng. Encycl. 906; *Howard v. Daly*, 61 N. Y. 375; *Zuck v. McClure*, 98 Penn. St. 541; *Nilson v. Morse*, 52 Wis. 240.

2. The plaintiffs alleged a readiness to perform on their part during all of the time, and a refusal by defendants to permit such performance, but their proof negatives this averment, hence they cannot recover; citing *Thomas v. Corey*, 74 Mich. 216.

3. Some courts go so far as to hold that if one bound to perform a future act, before the time for performance, declares his intention not to do it, this is no breach of the contract; citing 2 Pars. Cont. 676.

4. The silence of the plaintiffs gave defendants to understand that they had no further interest in the contract, as plainly as if express notice had been given of the fact; and the defendants had a right to rely on the fact that the contract had been rescinded or abandoned, and damages waived, which might be done by mutual consent; citing 2 Pars. Cont. 677; *Barton v. Gray*, 57 Mich. 636, and cases cited.

5. The right to elect as to breach of contract is one which cannot rest merely in the minds of the plaintiffs; the amount of damages might depend upon it; citing *Goodrich v. Hubbard*, 51 Mich. 70; and the right of election is lost by unreasonable delay; citing *Hill v. Mathews*, 78 Mich. 377.

6. On the question of damages, counsel cited *Petrie v. Lane*, 67 Mich. 454; *Leonard v. Beaudry*, 68 Id. 312.

*Depew & Rutherford* and *George H. Sleator*, for plaintiffs, contended:

1. On the measure of damages, and in support of the rule laid down by the trial judge, counsel cited *Burrell v. Salt Co.*, 14 Mich. 39; *Goodrich v. Hubbard*, 51 Id. 62.

MORSE, J. The plaintiffs entered into a contract with defendants, November 13, 1885, in which they agreed to go upon certain lands of defendants, and cut, haul, and deliver at the west branch of Hubbard lake, upon what is known as the "Lockwood Landing," all the timber suitable for saw-logs, for the sum of $3 per 1,000 feet. From two to three millions of said timber was to be deliv-

80 MICH.—29.

ered each year, until all was delivered. The timber was to be cut clean, and in a prudent manner, and all to be cut that was suitable for lumber or shingles. Said logs were to be well landed and on skids, and well rolled up. Supplies were to be furnished out of the store of defendants, and money provided to pay the men employed by plaintiffs, April 1, 1886, and the balance, if any, to be paid June 1, 1886, for the logs cut and delivered the first winter. The timber put in the second year was to be paid for April 1 and June 1 of 1887, as above.

The plaintiffs went onto the job in the fall of 1885, and that winter cut and delivered about two million feet, and were paid for it according to contract. The plaintiffs claim that they faithfully performed their contract for the first year, and were always ready and willing to perform the whole contract, but that they were prevented from doing so by the defendants. They bring this suit, alleging a breach of the contract on the part of the defendants, and claiming damages for such breach. They also count upon an agreement with defendants in relation to picking up and gathering about 2,500,000 feet of saw-logs scattered around the shores of Hubbard lake, and putting them in booms ready to be towed across said lake. They allege that defendants agreed to pay them 10 cents per 1,000 feet for such picking up; that they have completed the work, and have not been paid. The declaration also contains a claim for $5,000, based upon the common counts in *assumpsit*. The plea is the general issue, with notice of recoupment.

Upon the first contract the testimony upon the part of the plaintiffs tended to show that the first year they performed their contract, substantially, and that defendants settled up with them, finding no fault at any time with the manner of their performance; that, when they were

ready to commence again, in the fall of 1886, and went to defendants for supplies, they were informed by one of the defendants, Andrew W. Comstock, that they could not cut another stick of timber upon the lands,—he calling up a clerk to witness that he forbade their going on with the job. They waited until about December 1, 1886, when they took another job, upon which they lost money. There was left when they quit, upon the contract, about 4,000,000 feet of timber uncut. The defendants' measure showed 3,900,000. The plaintiffs testified that they could have put this timber in at $2 per 1,000, or at a profit of $1 per 1,000.

The defendants claim that plaintiffs did not properly perform their contract, in the following respects: Did not bank all the logs upon the Lockwood landing; did not cut the timber clean as they went; did not place all the logs on skids, and left over 3,000 logs in the woods, cut but not hauled, some being on skids, and some on the ground; that, by reason of the timber not being cut clean, the fire got in and damaged it, and that the same fire burned up and destroyed a large number of the logs left in the woods, and damaged those that were not destroyed. The defendants denied that they ever refused to let the plaintiffs go on with the job, and testify that, December 24, 1886, they served a written notice upon plaintiffs to proceed at once, and complete their contract. The plaintiffs admit receiving this notice, but say that they did not receive it until they had taken the other job, and were, therefore, not in a condition to go on with it. The plaintiffs recovered a verdict of $1,560.

The defendants bring error, and claim, first, that, there being 4,000,000 feet of timber upon the lands after the first year's work, the plaintiffs could not have completed the job in less than two years more, as the contract did not authorize them to put in over 3,000,000 in any one

year; that, as the defendants notified them in December, 1886, to go on with the job, the only damages they could recover would be what they suffered between the time they were forbidden to go on and the date they were notified to proceed; and that, under the most favorable view, they could only get damages for the expenses of one year's delay, and the interest upon the profits of one year's work.

We think the court charged the jury correctly in this respect. He said, in substance, that when plaintiffs were notified to proceed with the contract, as no suit had been commenced at that time, it was their duty to go on with the contract, if they were in a situation to do so, and that, if the jury believed the testimony of the defendants, the plaintiffs were never prevented from going on with the job, they could not recover, in any event. This question was in dispute, and the jury evidently found with the plaintiffs.

The testimony shows that plaintiffs, when this notice was served, had taken another contract, which employed all their teams and means. Under their theory, that up to this time defendants had forbidden their going on with the contract, it was too late for this notice to have any effect whatever upon the rights of the parties. Certainly the defendants could not refuse to furnish supplies, and forbid plaintiffs cutting any timber on the land, and wait until plaintiffs had taken another job, and then withdraw their refusal to permit plaintiffs to finish the contract, and, by a notice to them to go on and perform, force plaintiffs to proceed, or lose all claim for damages thereafter. The plaintiffs had a right to take the refusal as it was given, and to seek other employment upon the strength of it, and they were not obliged to break the other contract they had made in order to save their rights under this one with the defendants. In view of the fact

that the defendants went on the premises themselves in the winter of 1886 and 1887, and took off 500,000 feet, and let the contract to take off the balance to one Mulvaney, in 1887, at $2.50 per 1,000 feet, we are satisfied that if it be true, as claimed by plaintiffs, that defendants refused to let them go on with the contract until they had taken another job for the winter of 1886 and 1887, plaintiffs were fully justified in treating the contract as broken by the defendants, and were authorized to recover damages for the breach of the same as if no notice to proceed had ever been served upon them.

The claim that the contract had not been fully performed by the plaintiffs the first year was, under the testimony, fairly submitted to the jury. There was a dispute as to the lines of what was known as the "Lockwood Landing." The plaintiffs' testimony showed that a few thousand feet were piled beyond what Comstock claimed to be the line of the landing; the plaintiffs supposing the line extended further up the creek. After Comstock pointed out the line, no more logs were banked above it. If the jury believed this, there was a substantial compliance with the contract in this respect.

Plaintiffs' testimony also showed the timber cut clean, and in a prudent manner. They admitted that a few logs were left in the woods, some of which were not skidded; but this was owing to the fact that the season broke up with a big rain-storm, which, with the piling of logs by defendants upon a pond that plaintiffs' road crossed, prevented their getting all the logs out. Plaintiffs' testimony showed that this piling of logs by the defendants upon this pond, along the sides of their road across it, not only prevented plaintiffs' getting out all the logs they cut, but also from cutting and hauling more. This was denied by defendants; but, if so found by the

jury, it was a sufficient excuse for not banking all the logs cut.

The evidence upon all the points in which a non-performance of the contract was averred by defendants, coupled with the testimony of plaintiffs that defendants settled with and paid them for the first year's work without finding any fault whatever, and that they never complained of the contract being broken in any way by plaintiffs until they refused to permit further performance by plaintiffs, in September, 1886, was sufficient to go to the jury, and was properly submitted to them. They found against the defendants, and we are not prepared to say they were not warranted in so finding.

The true rule of damages was also laid down by the court. The plaintiffs testified that it cost them $2.10 per 1,000 to put in what they delivered the first year, and that, as part of the work, such as getting camps and roads in order, was done the first year, so as to cheapen the work on the job thereafter, they could have put the balance in for $2 per 1,000. They were therefore entitled, under their testimony, to $1 per 1,000 profit. They did not get 50 cents per 1,000, however, by the verdict; the jury, evidently, taking into consideration the evidence upon the part of defendants, some of which tended to show that there would have been no profit. There is no reason shown in the record why the plaintiffs should not recover, upon a proper showing, the difference between the contract price and the cost of putting in the logs. There is no particular element of uncertainty regarding the profits the plaintiffs would have realized from the performance of the contract. See *Goodrich v. Hubbard,* 51 Mich. 70; *Burrell v. Salt Co.,* 14 Id. 34; *Loud v. Campbell,* 26 Id. 239; *Leonard v. Beaudry,* 68 Id. 312, 80 Id. 163.

But the court committed error in relation to the picking up of the logs in Hubbard lake. Both parties admitted that there was a contract in relation to this work, but differed as to the compensation to be paid therefor. The plaintiffs claim they were to have 10 cents extra per 1,000; and the defendants testify that they were to pay only 2 cents extra, above the 25 cents for towing, and that they had settled with plaintiffs, and paid them in full, upon that basis. Yet the circuit judge permitted evidence to be given that it was worth 50 cents per 1,000 to pick them up, and instructed the jury as follows:

"The second element in this case is the question in regard to picking up these logs on Hubbard lake. The plaintiffs claim that defendants agreed to give them ten cents a thousand feet extra, over and above the 25 cents that they were to receive for towing. If there was a contract between the defendants and plaintiffs in this case, and they understood it, that the Rayburns were to receive ten cents a thousand for picking up those logs, they were entitled to it, if there was such a contract, and it was understood by all the parties. There could not be any contract unless they did understand each other. But the defendants claim that the contract was different. The defendants claim that the plaintiffs agreed to pick them up for two cents extra. If that was the contract, and the parties understood it, then they were bound by that, because, when they make their contracts, they are bound by them. It does not make any difference how hard it is for one side, or good for the other, when we enter into contracts; if we do enter into them, we are bound by them. So that here are two separate claims as to the contract,—one for two cents, and one for ten cents. You are to judge. You have heard the testimony as to whether there was any contract at all, and, if so, which of these parties is right. If it was for two cents per thousand feet, then the Rayburns will have to be satisfied with that; and it seems, from the evidence, that they have received that. If it was ten cents per thousand feet, then they are entitled to receive it; and, if they have not received it, then they are entitled to receive it at your hands in this suit. But, if you find

that these parties did not agree on anything, or, if they did talk about it, they were both mistaken when they quit, and their minds did not meet upon this question, then there was no contract at all, because it takes as many as two parties to make a contract, and their minds must meet. If you should find that there wasn't any contract, and the work was done,—and that is admitted, —in that case the Rayburns would be entitled to receive whatever, in your judgment, the work was reasonably worth, because, when we work for a man, and there is no agreement as to what we shall receive, the law gives us what it is worth."

There was no ground in the evidence from which the jury might infer that there was no contract; that the minds of the parties did not meet. There was, undoubtedly, a parol arrangement as to the picking up of these logs; and the only question for the jury to determine was the price to be paid for the work. There was no misunderstanding about it. Either the defendants agreed to pay ten cents or two cents. The burden of proof was upon plaintiffs to show that the price was ten cents. Failing in this, they could not recover, as they had been paid the two cents. As there is no way of ascertaining what conclusion the jury arrived at as to this matter, the judgment must be reversed and a new trial granted, with costs of this Court to defendants.

The other Justices concurred.