FOWLES *v.* RUPERT.

1. APPEAL AND ERROR—SUFFICIENCY OF PLEADINGS—WAIVER.
    By pleading to a declaration in justice's court, without objecting to its lack of formality, defendant waives the right to assign error on the introduction of evidence under it.

2. SALES—BREACH OF CONTRACT—PURCHASER'S RIGHT TO CONTROL PROPERTY.
    Plaintiff sold defendant all the hay in certain stacks, to be baled before taken away, defendant to furnish baler and plaintiff to assist in baling and deliver the hay at the railroad. Defendant directed the baler which stacks to bale first, but the baler left the premises because plaintiff forbid his baling unless he baled certain other stacks first. *Held,* that the purchaser had the right to direct the order of baling, and plaintiff could not recover as for breach of contract.

Error to Calhoun; Hopkins, J. Submitted October 6, 1904. (Docket No. 32.) Decided November 9, 1904.

Assumpsit by Louis Fowles against Conrad Rupert for breach of a contract to purchase certain hay. There was judgment for plaintiff, and defendant brings error. Reversed.

*Tompkins & Stewart*, for appellant.
*North & Salisbury*, for appellee.

MOORE, C. J.    This case was commenced in justice's court.    The plaintiff filed with the justice a written con-tract, reading as follows:

" C. Rupert & Sons of Newark, N. Y., bought from L. Fowles all the hay in stacks on his farm except two stacks which had rain on it after it was cut and before it was stacked for four dollars and fifty cents a ton.    Fowles is to cut or rake from stacks all the outside and stained hay not fit for market.    Fowles is to help bale and deliver and load on cars at Renton without charge and board men and team and find fuel for engine while baling.    Hay to be baled first September or soon after the baler can be got there, R. & Sons to have cars at station to load hay in when baled."

He declared orally in assumpsit and for breach of con-tract.    The defendant filed a written plea of the general issue and gave notice of set-off.    He also set out verba-tim the written contract, and averred he was at all times ready to perform it, but was prevented from doing so by the acts of plaintiff, whereby he had sustained damages in the sum of $500, which he would recoup against any claim of plaintiff.    A trial was had before the justice, who rendered a judgment in favor of plaintiff.    An appeal was taken to the circuit court.    A trial was had before a jury, which rendered a verdict in favor of the plaintiff.    The case is brought here by writ of error.

The appellee has not furnished us with a brief.    The ap-pellant presents 29 assignments of error.    We shall discuss but few of them, for the reason that most of them are eliminated by our view of the effect of the testimony offered on the part of the plaintiff.    The defendant was the only one of the firm making the contract who lived in Michigan.    He lived in Battle Creek.    The hay he pur-chased was baled and shipped to New York.    The evi-dence discloses that Mr. Rupert hired a man by the name of Brown to bale the hay, and he in turn had as his fore-man in charge of his baler a man by the name of McCon-nell.    Part of the hay mentioned in the contract was in one field and a part in another.    In one field there was more

timothy in the hay than in the other field, which had more
clover.   The baler was in operation about the 1st of Sep-
tember at a neighbor's of the plaintiff.   Mr. Fowles saw
Mr. McConnell there, and asked him to bale the stacks of
hay having the most clover first.   Mr. McConnell replied,
" All right."   Later he saw Mr. Rupert, who told him to
bale the other hay first, as it was better cured, and he was
afraid the clover hay had not had time to sweat out, and
would heat in the bales.   On Thursday, September 4th,
Mr. McConnell moved into the field where the stacks had
the most timothy.   Mr. Fowles furnished the necessary
help, and they commenced baling the hay, and continued
to do so until Saturday.   As fast as the hay was baled, it
was drawn to Renton, and loaded into the cars, all of
which were filled, and more bales were carried over to Renton
than the cars would contain.   It is claimed by defendant
that three additional cars were put on the siding on Sun-
day.   On Monday Mr. McConnell quit baling.

The plaintiff testified:

"Mr. Rupert left the premises because I wanted him to
go back on the other place and bale the other hay first as
he agreed to do.   He didn't do that.   He left."

The agreement here referred to was the talk he had with
Mr. McConnell a day or two before the baling commenced
at the plaintiff's.   Mr. Carr, a witness for the plaintiff,
testified, referring to a conversation between Mr. Fowles
and Mr. McConnell just before the balers left the farm:

" Mr. Fowles told him that he wanted him to go back
and bale this clover hay.   The rain would damage it more,
and he would have to bale that first.   He said Mr. Rupert
had told him to go on and bale this timothy, and Fowles
wanted this clover baled, and he said if he could not bale
the timothy he would move out."

On the cross-examination he testified:

"I did not hear Mr. Fowles tell Mr. McConnell that
they could not bale any more hay there.   We did not go
to work, and I could not work unless the rest of them did.
Mr. McConnell was not ready to go to work when he came

there that morning about seven o'clock. He had not fired up yet. He immediately started to fire up when he came. He was getting ready to go to work. They were talking about the hay business. Mr. Fowles told him he could not bale any more of that timothy hay. He didn't stop him from baling it. He just told him he could not go up and bale any more of that until he went up and baled the clover."

The defendant testified :

"I first learned that Mr. McConnell had ceased to bale there on Monday. I was at my boarding place, and learned it from Mr. Fowles. He called me up on the telephone. * * * He called me up, and told me that they had left. He said he would not let them bale the timothy hay and keep the heavy mixed hay and clover, as he called ed it. He gave no other reason."

Mr. McConnell testified :

"We went back there on Monday. We were there between six and seven o'clock in the morning. By 'we' I mean my men and myself. Mr. Fowles came down a little while after. His men came down a little while after. I told him Mr. Rupert told me to bale out the timothy hay first, and Mr. Fowles told me I could not do that. He said he was not going to let his timothy go and then have his clover hay on hand. He did not say that the clover hay was liable to be more damaged—not to my recollection. * * * I fired up Monday morning to go to work. Mr. Fowles' men did not render any assistance in baling that morning. They did not remain there, ready to go to work when I got ready. They went back with Mr. Fowles. One of them stayed a few minutes, but he drove away. When I got ready to press hay that day, none of the assistants to be furnished by Mr. Fowles was present. I remained there, and waited for him until about nine o'clock, I think, in the neighborhood. We then went to Mr. McGregor's about two o'clock, I should think."

It is true that upon the trial Mr. Fowles said one reason why he forbid the baling of any more timothy was because there were no cars to load the hay into, but his cross-examination shows he had no information upon that

subject until after his talk with Mr. McConnell. The record discloses that he afterward sold all the hay which was not spoiled at an average price of seven dollars a ton, delivered at Battle Creek. This suit was commenced the same day the balers left Mr. Fowles' premises. He at that time had delivered hay amounting at the contract price to $103, and had received from defendant $50.

The first assignment of error calling for discussion relates to the admission of testimony tending to show a breach of the contract. It is claimed this was inadmissible, for the reason that the declaration did not sufficiently describe a breach of the contract. No objection was made to the declaration in justice's court. Defendant pleaded to it, set out verbatim the contract referred to therein, claimed he was ready to perform it and was prevented from doing so by plaintiff, and sought to recoup his damages. He did not misunderstand the claim of plaintiff, but tried it out in justice's court. If the objection had been made promptly, the declaration could easily have been made more formal. We think it too late now to make the objection.

The next assignments of error requiring attention relate to the admission of testimony bearing upon the question of damages and the refusal to strike it out. The claim is that defendant was not shown to have violated the contract. It is very clear, taking the testimony as a whole, that Mr. Fowles insisted upon deciding the order in which the hay should be baled, and, when his right to do so was not conceded, made it impossible for the employés of defendant to go on with the baling. This he had no right to do. Rupert & Co. had bought all of the hay. They had a right to decide the order in which it should be baled, so long as it did not result in loss to the plaintiff. The plaintiff, then, being responsible for the failure to bale the hay, he is not entitled to damages for a failure to bale and take it away. See *Hudson* v. *Feige*, 58 Mich. 148; *Rayburn* v. *Comstock*, 80 Mich. 448. We think the court should have told the jury that the plaintiff, under his own

showing, was not entitled to any damages under his claim of a breach of the contract. We do not deem it necessary to discuss the other phases of the case.

Judgment is reversed, and a new trial ordered.

The other Justices concurred.