63  276
91  159

63  276
99  492

63  276
106  236
106  543

63  276
109  384

63  276
114  34

RUFUS P. ATKINSON AND GEORGE TAYLOR V. HENRY R. MORSE.

[See 57 Mich. 276.]

*Impaneling jury—Commingling lists of grand and petit jurors—Contract—Loss of profits—Measure of damages.*

1. A county clerk put the packages containing the lists of *grand* and *petit* jurors returned from the wards of a city in his county into the *same* jury-box, and drew promiscuously therefrom the names of both grand and petit jurors to attend court as *petit* jurors. On drawing a jury for the trial of a cause several members of the panel were found to have been *returned* as *grand* jurors, for which reason the array was challenged, and the court discharged all of the jurors drawn from said city, and directed the sheriff and clerk to draw from the list of names *properly* returned twelve jurors, who were summoned by the sheriff to appear forthwith.

   *Held,* that the action taken was proper under How. Stat. § 7578,[1] and that a challenge to the array subsequently interposed was properly overruled.

2. Where a party contracted to cut, haul, and deliver all the merchantable cedar on certain described land at a *fixed* price, and was prevented from so doing by the wrongful act of the other party,—

   *Held,* that he could recover as damages the *profits* he would have made if allowed to perform the contract, the measure of which would be the difference between the *cost* of the work *to be* performed and the contract price.[2]

---

[1] How. Stat. § 7578.—"Whenever, for any cause, grand or petit jurors shall not have been drawn and summoned to attend any circuit court, or a sufficient number of *qualified* jurors shall fail to appear, such court may, in its discretion, order a sufficient number of grand or petit jurors, or both, to be *forthwith* drawn and summoned to attend such court.

"*Provided,* That in drawing jurors under this section the court may, for the purpose of obtaining a jury or talesmen near the county-seat, direct from *which* townships or supervisor districts such jurors shall be drawn."

See *People v. Coffman,* 59 Mich. 1 (head-note 3).

[2] See *Leonard v. Beaudry,* 13 West. Rep. 61.

Error to Alpena. (Emerick, J.) Argued July 20, 1886. Decided October 21, 1886.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion.

*C. E. Williams,* for appellant:

As to recovery of loss of profits as damages in suit for violation of labor contract, see 1 Suth. Dam. 106, 109; *McKinnon v. McEwan,* 48 Mich. 108; *Allis v. McLean,* Id. 428; *Goodrich v. Hubbard,* 51 Id. 68; *Aber v. Bratton,* 60 Id. 357.

Speculative or contingent profits, or any injury to the general business of the plaintiff, are not allowed in estimating the damages sustained by breach of contract: *Equitable Gas Light Co. v. Baltimore Coal Tar Co.,* 65 Md. 73, and cases cited.

*Turnbull & Dafoe,* for plaintiffs:

As to recovery of loss of profits, see *Burrell v. N. Y. & Saginaw Salt Co.,* 14 Mich. 38.

Where the performance of a contract is prevented by the employer, the contractor can recover for the work done and damages for such prevention: *Black v. Woodrow,* 39 Md. 194; *Wilson v. Bauman,* 80 Ill. 493; *Whitfield v. Zellnor,* 24 Miss. 663; 2 Suth. Dam. 521.

And an omission to perform some precedent or concurrent condition is such a prevention as gives a right to damages for loss of profits on that portion of the contract not performed: *Grand Rapids, etc., R. R. Co. v. Van Dusen,* 29 Mich. 431; *Thorp v. Ross,* 4 Keyes, 546; *Kugler v. Wiseman,* 20 Ohio, 361; 2 Suth. Dam. 522, and cases cited.

And expenses incurred in preparations for the performance of the contract may also be recovered: *United States v. Speed,* 8 Wall. 77; *Thompson v. Jackson,* 14 B. Mon. 114.

CHAMPLIN, J. Plaintiffs declared specially on a verbal contract made with the defendant, by the terms of which plaintiffs allege they were to cut, haul, and deliver, on the banks of the Lower South Branch of Thunder Bay river, all the merchantable cedar on a description of land known as the "White eighty," owned by defendant; the defendant to pay

therefor, from time to time, as the operation progressed, at prices agreed upon, in supplies, etc., and the balance, over and above the amount so furnished, on the final accounting, when the work should terminate, if anything should then be found due.

Plaintiffs also allege that the number and inspection of the telegraph poles, railroad ties, and paving posts were to be determined by an inspector provided by the defendant, and to be paid for by him, the inspection to take place as the poles, ties, and posts were piled in the woods; and also claimed that the supplies furnished by the defendant were to be so furnished at certain specified prices.

That on November 25, 1883, plaintiffs began cutting under the contract, performed considerable work, and that defendant refused to perform his part of the agreement.

Plaintiffs also allege that on or about the middle of February, 1884, defendant notified them to quit the job, and that by means of this they were deprived of *great profits and gains* that they would have made had they been allowed to complete the contract; also declared on the common counts in assumpsit, and furnished a bill of particulars of their demand.

The defendant pleaded the general issue, and gave notice of set-off, and also notice that he would insist and prove, in defense to plaintiffs' claim, that the only contract made in the premises was that the plaintiffs might enter on land of the defendant situated on section 15, town 29 N., range 7 E., Michigan, known as the "White eighty," and cut and manufacture all the cedar thereon, suitable for the purpose, into *telegraph poles*, and the residue, not suitable for poles, into railroad ties and posts, and to deliver the same on the bank of the river, piled in a suitable manner, at the water's edge, to be convenient for inspection and putting afloat; that the cedar was to be cut from down timber, and, after the down timber was exhausted, then from standing green timber.

That the manufactured timber was to be merchantable in all respects, according to standard rules of inspection, and the inspection to be made on the river bank by some competent person, who was to be paid by the parties jointly,— the work to be done in a good and workman-like manner, and to be completed on the breaking up of the logging season in the spring of 1884.

That it was expressly understood and agreed that no timber suitable for telegraph poles was to be cut into ties and posts; and that the principal object and purpose of the contract was to procure poles, and that ties and posts were to be made only from such timber as should be unsuitable for poles.

Defendant also gave notice that he would prove that plaintiffs departed from the terms of the contract in all essential particulars, and claimed damages therefor.

The jury returned a verdict for the plaintiffs for $550.

The record presents 44 assignments of error, which counsel for defendant has grouped under four principal heads in his brief.

The first pertains to challenges made to the array of jurors impaneled to try the cause.

The county clerk had disobeyed the plain instructions of the statute, and had put the packages containing the lists of grand and petit jurors returned from the three wards of the city of Alpena all into one box, and had drawn promiscuously from the box the names of both grand and petit jurors, to attend court as petit jurors.

When the cause was reached for trial, a jury was drawn from the box, and several of the panel turned out to have been returned as grand jurors, and not as petit jurors. The defendant's counsel challenged the array. His challenge was entertained, and the court made an order discharging all the jurors drawn from the city of Alpena from further attendance or service, and directed the sheriff and clerk to draw from the list of names properly returned from the city

twelve jurors, four from each ward, and that the sheriff summon them to appear forthwith.

We think this was the proper course to pursue, under the circumstances, and was fully warranted by section 7578 of Howell's Statutes. When this order was complied with another jury was impaneled, and the defendant then interposed another challenge to the array, which was properly overruled.

The second group of assignments relates to the measure of damages. Defendant requested the court to charge:

"1. That there is no evidence in this case that entitles the plaintiffs to damages beyond such balance as may be found due under the contract.

"2. That plaintiffs are not entitled, under the evidence, to any damages for profits on any work they did not perform.

"3. That, if the plaintiffs are entitled to recover at all, it can be only for merchantable poles, ties, and paving posts delivered on the river bank, at contract price.

"4. That, to entitle plaintiffs to recover damages for loss of profits, there must be no uncertainty as to what they would have been; the profits to be recovered must not be conjectural, speculative, or dependent upon contingencies or the chances of business."

The court charged the jury, in substance, that if defendant violated the contract by refusing reasonable advances of supplies or money, and that the plaintiffs were making a profit, or would have made a profit, on the poles, ties, and posts which they could have put in during the remainder of that season, then they were entitled to recover for loss of profits.

The circuit judge would not have been justified, under the evidence in this case, in giving to the jury the first three charges above requested. Upon the subject of the fourth charge he instructed the jury as follows:

"In actions for a breach of contract, the law does not favor or permit any mere speculative or general damages, or any damages in the way of mere prospective profits which the party might make; but where profits, by the terms of the contract, are to spring directly from labor which is to be

performed,—a definite and specific amount of labor, upon a definite and specific article, to be manufactured or made,— and the plaintiff is prevented from fulfilling his contract by the action of the defendant, the loss of the profits which might have been made are sometimes permitted to be recovered."

He then gave them minute instructions, covering the whole facts of this case, upon the theory and evidence presented on the part of both the plaintiffs and defendant, and, in a very able and clear charge, submitted the facts with suitable instructions to the jury, in no part of which do we find any error; and we therefore overrule the assignments based upon his charge, and refusal to charge as requested.

The rule of damages laid down by the court for the guidance of the jury was correct. The law is well settled that, under circumstances like those declared upon and proved in this case, the party prevented by the act of the other party from completing his contract may recover damages for the loss of profits he would have made had he not been prevented from performance. *Burrell v. New York, etc., Co.,* 14 Mich. 34; *Goodrich v. Hubbard,* 51 Id. 63; *Loud v. Campbell,* 26 Id. 239.

Damages for loss of profits are more frequently allowed to be recovered in cases of tort than contract; but when loss of profits arising from a breach of contract can be proved with a reasonable degree of certainty, and such loss is directly traceable to the breach of the contract, there is no reason why such damages may not be recovered. The cases, however, are exceptional where they can be recovered, and such profits, in order to afford a basis for recovery, must not be conjectural or speculative, or subject to uncertain contingencies. In this case, the plaintiffs were to perform certain labor, at specified prices, fixed by contract, from which the profits were to spring; and the amount of such profits could be ascertained with reasonable certainty, it being the difference between the cost of the work to be performed and the contract price.

The third group of assignments relates to the amount of work done by the plaintiffs, and the manner of ascertaining the same. Both parties introduced evidence of the amount of work done, and the inspection made by each party was laid before the jury. We have examined the several errors assigned upon the charge of the court upon this branch of the case, and are satisfied that the law was correctly given.

The testimony of the plaintiffs tended to show that the defendant agreed to send an inspector to inspect the poles, ties, and posts as they were gotten out; that he sent a man by the name of Hughes, who inspected for a couple of days, and then left the work, and that the defendant, although requested so to do, did not send any inspector thereafter; that the plaintiffs employed one Tibbetts to do the inspection, and that defendant was afterwards at the place where he was inspecting, and knew that he was engaged in the inspection of the poles, ties, and posts, and made no objection. After the plaintiffs had left the job, defendant sent a Mr. Workman to inspect the poles, etc., then lying on the bank of the stream.

It is unnecessary here to repeat the charge of the court, which was full and unexceptionable upon the points covered by the assignments. Under the charge of the court, the jury must, in returning a verdict for the plaintiffs, have found the contract to be that which the plaintiffs testified to, and consequently there was no error prejudicial to the defendant in refusing to give the defendant's seventh request.

The judgment of the circuit court must be affirmed.

CAMPBELL, C. J., and MORSE, J., concurred. SHERWOOD, J., concurred in the result.