MARY C. LEONARD v. CHARLES BEAUDRY ET AL.

*Contract for furnishing saw-mill with logs—Breach—Loss of profits— Measure of damages.*

1. In a suit by a mill-owner for the non-delivery of logs under a contract for their manufacture, the measure of damages is the difference between the cost of manufacture and the contract price.

2. Where a claim is made for damages arising from a breach of contract, and evidence is offered to show loss of profits which might have been realized from its performance, the question to be determined is whether the damages claimed are too conjectural, speculative, or contingent to form a safe basis for estimating the damages.

3. Where a contract is executory, and the time for its performance has expired, and the elements out of which the profits were to arise can be ascertained and proved with reasonable certainty, and especially where the compensation is fixed by the contract, there is no reason why the difference between the cost of performance and compensation agreed upon should not be recovered

as *actual* damages suffered by the aggrieved party by its viola-
tion, whether they be called gains prevented or loss of profits.

4. The declaration in this case is held to state a cause of action.

Error to Muskegon. (Russell, J.) Argued January 11,
1888. Decided January 26, 1888.

Assumpsit for breach of sawing contract. Plaintiff brings
error. Reversed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*Bunker & Carpenter,* for defendants.

CHAMPLIN, J. This action was brought to recover dam-
ages for a breach of contract. The declaration alleged, by
way of inducement, that plaintiff was the owner of a steam
saw-mill in the township of Laketown, which was fitted with
a band-saw and all the appliances necessary for its proper
operation, well equipped, in good working condition, and
capable of cutting 30,000 feet of pine lumber per day.

The plaintiff then alleges that on the first day of March,
1886, the plaintiff made and entered into a contract with
defendants, whereby they agreed to furnish and deliver at
her mill in the spring of 1886, as soon as her mill was ready
for operation, 1,000,000 feet of pine saw-logs suitable for
sawing on band-saws, to be sawed into lumber on said band-
saw for defendants, and to pay plaintiff for sawing the same
three dollars for each thousand feet for merchantable and
short lumber, and two dollars a thousand feet for culls; all
of said logs to be so delivered prior to the first day of July,
1886.

That, in consideration thereof, the plaintiff promised and
agreed to and with the said defendants to receive said logs,
and to manufacture the same into lumber upon said band-
saw as soon as delivered as aforesaid, according to the capac-
ity of said saw.

That the plaintiff's mill was, to wit, on the tenth day of May, 1886, ready for operation, whereof defendants had due notice; and the plaintiff was then and there, during the sawing season of 1886, ready and willing to have accepted said logs, and to have sawed them on said band-saw, whereof said defendants had notice; yet the defendants did not nor would at said time, nor during said sawing season of 1886, or at any time since, deliver, or cause to be delivered, said logs, or any part thereof, or any other logs whatsoever, but, on the contrary, wholly refused so to do, and in consequence thereof the plaintiff has been deprived of sundry great gains and profits which she might and would have acquired to herself by sawing said logs as aforesaid.

That after the making of said contract she made and entered into a contract with H. C. Akeley for the sawing and manufacture of logs into lumber on said band-saw during the remainder of said sawing season of 1886 not needed by her for the performance of said contract made by her with the defendants as aforesaid, and the logs delivered to her by said Akeley, together with those which said defendants had agreed to furnish by their said contract, were sufficient to stock said mill, and to keep said band-saw in full operation, during the whole of said sawing season of 1886; and that the plaintiff, relying on said contract and agreement of defendants, and for the purpose of holding and keeping herself ready and able to perform said contract on her part, declined and refused to enter into other contracts for the sawing of logs on said band-saw during said sawing season for said year, which were, after the making of said contract and prior to the opening of the sawing season for said year, offered and tendered to her, and by means of which she would have been able to run and operate said band-saw continuously during said sawing season of 1886 to its full capacity, at a great profit.

That after the refusal of said defendants to furnish and

deliver said logs as aforesaid, and as soon as she learned that the said defendants would not furnish them, she made diligent endeavors and exertions to obtain other suitable logs for sawing on band-saws, to cut and manufacture into lumber at her said mill on said band-saw, and that she was unable to obtain them ; and that by reason of defendants' failure and refusal to furnish and deliver said logs as aforesaid, and her inability to obtain other logs to be cut in their place, said plaintiff was obliged to and did run said mill and operate said saw at a loss in cutting inferior logs, not suitable to be cut upon a band-saw, but which were the best logs she could obtain for that purpose for a long time, to wit, three weeks and upwards; and for another long space of time, to wit, two weeks and upwards, said mill was compelled to lie idle, and said plaintiff was compelled, during said time, to pay out large sums of money as wages to her employés while waiting for said logs to be delivered by defendants, and while the mill was lying idle,—all to plaintiff's damage $3,000.

A bill of particulars of plaintiff's demand was filed, as follows:

1886.

"August 1.   Actual loss sustained by plaintiff in running mill and cutting logs inferior to those to be furnished by defendants_____ $500.00

"August 1.   Loss of actual profits plaintiff would have made for 3 weeks while cutting inferior logs   500.00

"August 1.   Loss of actual profits plaintiff would have made while mill was lying idle by reason of defendants' failure to furnish logs_____   500.00

"August 1.   Cash paid by plaintiff for employés' wages while mill was lying idle by reason of defendants' failure to furnish logs_____   500.00

"August 1.   Loss of actual profits plaintiff would have received in manufacturing lumber from one million feet (board measure) of logs contracted to be delivered to her by said defendants for sawing, had said logs been so delivered in accordance with the agreement of said defendants, at $1.50 per M_____ 1,500.00

"Interest at 7 per cent. on each item.

"*Dated April* 14, 1887."

The defendants pleaded the general issue.

The cause was tried at the Muskegon circuit before Hon. F. J. Russell, circuit judge, and a jury, at which time the following proceedings were had: After the jury was impaneled, the counsel for the plaintiff made an opening statement to them as follows:

" *Gentlemen of the Jury:* The plaintiff, by her proof, will endeavor to show that during the spring of 1886, and before the commencement of the sawing season of that year, the plaintiff, through her agent and representative on the one side, and the defendants on the other, entered into a contract, by the terms of which the defendants agreed to deliver at the plaintiff's mill, which is situated on the north side of Muskegon lake, one million feet of logs, to be sawed by the plaintiff by what is known as a band-saw; that the plaintiff was to receive the logs, and manufacture them into lumber, for which the defendants were to pay three dollars ($3.00) per thousand feet for the merchantable and short lumber made from the logs, and two dollars ($2.00) per thousand feet for the culls.

"That at the time they were negotiating to make this contract, and at the time it was made, it was known and understood by the parties to it that, in order for the plaintiff to prepare to do this work,—to receive and saw these logs,—it would be necessary for her to arrange to have the sawing of a quantity of her own logs, with which her mill was supplied, done by other parties; and that, soon after entering into this agreement with the defendants, the plaintiff had a million feet or more of her own logs sawed elsewhere; that the plaintiff was all the time willing and ready to perform the contract on her part, but that the defendants neglected to perform it on their part, and never delivered any logs.

"We will show that a profit would have accrued to the plaintiff in doing the work bargained to be done at the time named, and at the contract price, had the logs been delivered in accordance with the agreement; that it may reasonably be supposed to have been in the contemplation of both parties to the contract, at the time they made it, that the plaintiff's mill would have to lie idle, or operate without any profit, in case the defendants made a breach, and failed to deliver the logs.

" Now, we will undertake to show that arrangements by log-owners and by mill-men for sawing by the thousand are

made in the winter and spring of the year, and before the commencement of the sawing season, so that the owner of a mill making contracts for the receipt and sawing of logs for others, in case of a breach of that contract, can very seldom, if at all, obtain a stock after the sawing season has fairly begun; that the plaintiff has been prevented frcm making the profit which she would have made on this work solely by reason of the neglect of the defendants to deliver their logs in accordance with the terms of the agreement.

"We will show that, as soon as this neglect on the defendants' part became known to the plaintiff, she used all reasonable diligence in endeavoring to procure stock elsewhere with which to operate her mill, but, for the reasons which I have stated, she was unable to procure a stock with which to operate her mill all the time, and she could not procure the quantity and kind of logs contracted to be delivered by the defendants, but was able only to procure a small quantity, comparatively, and of a poorer quality; that she operated her mill upon this poorer quality of logs for the purpose of keeping the men together, endeavoring to make a profit,—endeavoring to lose as little as possible by reason of the violation of the contract on the part of the defendants,—but in operating her mill upon this poorer class of logs (the best she could obtain), instead of making a profit, she really operated at a loss, so that, during all the time it would have required her to perform her contract with the defendants, her mill was either idle, or was being operated without any profit.

"That the plaintiff's inability to procure logs after the neglect of the defendants became known was something that might naturally and reasonably have been expected by the contracting parties, because they live here, and know that arrangements of the kind are always made in the spring of the year. Our measure of damages, as we claim, will be (in case you find there has been a contract and a breach of it on the part of the defendants) the difference between what it would have cost the plaintiff to do the work and the contract price; making reasonable deduction for the less time engaged, and for the release from the care, trouble, risk, and responsibility attending a full execution of the work."

And the counsel for the said plaintiff, to prove and maintain the said issue on her part, called Phillip P. Leonard, who, being duly sworn, testified as follows:

" *Q.* Where do you live?

" *A.* In the city of Muskegon."

*Defendants' Counsel (Mr. Bunker).* "I desire, at this time, to object to the introduction of any testimony under the bill of particulars in this case, and the claim made by the counsel for the plaintiff in his opening statement to the jury, for the reason that there can be no recovery under the same."

*The Court.* "I will sustain the objection."

To which ruling and decision so made the counsel for the said plaintiff, in behalf of said plaintiff, did then and there except

" *Counsel for plaintiff.* In addition and in support of the statements made in opening the case, we will offer to prove that contracts between mill-owners and log-owners are made in the winter and spring of the year before the commencement of the sawing season, and that, after the commencement of the sawing season in each of the years from 1867 to the present time, it has been impossible to contract for stock to saw by the thousand ; and that all parties to this contract understood that these arrangements are made before the commencement of the sawing season, and that the natural result of a breach of the contract on the part 'of the defendants would be that the plaintiff's mill would have to lie idle, and that it would be impossible for her to procure stock after their breach upon which her mill could be operated with profit.

"We offer to show that the cost of manufacture by the plaintiff was $56.75 per day, including the wear of the mill, machinery, belts, saws, and files, and all repairs to the mill; that the receipts to the plaintiff from operating her mill under this contract would have been, per day, $3.00 per thousand feet for twenty-five thousand feet of merchantable lumber, $3.00 per thousand feet for one thousand feet of short lumber, and $2.00 per thousand feet for twenty-five hundred feet of culls; from pickets, $6.00 ; from slabs, $2.25,—or a total of $91.25, or an actual profit of $1.38 on each thousand feet of logs, making a total of $1,380.00 on one million feet; from which we admit a reasonable deduction should be made for the less time engaged, and for the release from the care, trouble, risk, and responsibility attending a full execution of the contract on the part of the plaintiff.

"That during a portion of the time necessary to have per-

formed this contract by the plaintiff (had the logs been delivered in accordance with the agreement of the defendants), the mill was compelled to lie idle, during which time the plaintiff was under expense for a portion of her help which was employed by the season.

"That, during another portion of the time that would have been required to perform the contract, the mill was operated upon logs of a poorer quality,—so poor that the mill yielded only about ten thousand feet per day of merchantable lumber; that plaintiff procured them at the lowest price she could procure them for, and sold her lumber at the highest price she could obtain; that she was unable to procure any other logs to saw, and that she actually sustained a loss in sawing this poorer quality of logs.

"That, when the breach of this contract became known to her, she visited all the log-owners who supply the mills at Muskegon with logs, endeavoring to get logs to saw by the thousand, or to purchase them; that, in this endeavor, she visited several log-owners who desired earlier in the spring to supply her mill with logs to saw by the thousand, with the view of obtaining stock, but that, in these and all other cases, she found that the logs with which the mills of Muskegon were to be supplied for the summer had been disposed of by contract; that the defendants were fully cognizant of this custom of making contracts, and were frequently notified that the plaintiff was willing and ready at all times to perform the contract on her part."

To which offer the counsel for the said defendants did then and there object as immaterial, irrelevant, and incompetent.

*The Court.* "The objection will be sustained, and the verdict will be 'no cause of action.'"

To which ruling the counsel of the said plaintiff, on behalf of said plaintiff, did then and there except; and the jury, under the direction aforesaid, then and their gave their verdict for the defendants of "no cause of action."

The judgment rendered upon this verdict is defended in this Court by counsel for defendants upon the sole ground that the damages claimed by the plaintiff are simply "*gains prevented*" or "*loss of profits,*" and that under the authority of *Petrie v. Lane,* 67 Mich. 454 (35 N. W. Rep. 70), loss

of profits cannot be recovered as damages by a mill-owner for breach of contract caused by the failure of furnishing logs to be sawed at the mill.  But, by reference to *Petrie v. Lane*, it will be observed that the case differs essentially from the one under consideration.  The difference will be apparent from the language of Mr. Justice MORSE (at page 457) in delivering the opinion in that case, as follows:

" It will be noticed that the plaintiffs did not offer to show that they had incurred any damage by reason of expenses necessarily incurred in getting ready to perform this contract, or that the mill had been stopped or laid up for any time for want of work by reason of the breach of the contract on defendant's part.  Nor did they even claim nominal damages.  They put themselves deliberately upon the naked proposition that, as a matter of law, they were entitled to the profits upon all the logs mentioned in said contract, independent of any fact or thing showing actual damages. In other words, although they incurred no expense on account of preparing to perform this contract, and their mill was not closed because of the breach of the same, but was at work all the time manufacturing other lumber to its fullest capacity, they were, nevertheless, entitled to the profits they might have made in the fulfillment of this contract, and also all the profits they might make in the same time in sawing other lumber, thereby in effect doubling the capacity of the mill, and increasing its profits twofold."

Such was not the claim put forth in the case we are now considering.  The plaintiff here seeks to recover only the actual damages incurred by the breach of the contract declared on.  She was to receive certain compensation for doing specified work; that is, in manufacturing logs into lumber at an agreed price per thousand feet.  Her damages are measured by the difference in the cost of manufacturing and the contract price.  If the cost of manufacturing could be proved with a reasonable certainty, there could be no difficulty in ascertaining the damage.

In *Atkinson v. Morse*, 63 Mich. 276 (29 N. W. Rep. 711), the action was to recover damages for a breach of contract

in which the plaintiffs agreed to cut, haul, and deliver on the bank of a river all the merchantable cedar on a certain description of land at prices agreed upon, and they claimed to recover the difference between the cost of doing the job and the agreed price. The court charged the jury, in substance, that if the defendant violated the contract by refusing reasonable advances of supplies or money, and the plaintiffs were making a profit, or would have made a profit, on the polls, ties, and posts which they would have put in during the remainder of that season, then they were entitled to recover for loss of profits. We held that the rule of damages laid down by the court for the guidance of the jury in that case was correct; that the law is well settled that, under circumstances like those declared upon and proved in that case, the party prevented by the act of the other party from completing his contract may recover damages for the loss of profits he would have made had he not been prevented from performance. We also said, in that case (at page 281):

"Damages for loss of profits are more frequently allowed to be recovered in cases of tort than contract; but when loss of profits arising from a breach of contract can be proved with a reasonable degree of certainty, and such loss is directly traceable to the breach of the contract, there is no reason why such damages may not be recovered. The cases, however, are exceptional where they can be recovered, and such profits, in order to afford a basis for recovery, must not be conjectural or speculative, or subject to uncertain contingencies."

And in the case of *Petrie v. Lane,* relied upon by the defendants, Mr. Justice MORSE states the principle (at page 458) as follows:

"The compensation aimed at, and which the law intends to give, in an action for breach of a contract or agreement of this kind, is the damages actually incurred on account of such breach. The law seeks to make good the party injured by such breach, and to put him, as far as possible, in the same condition that he would have been in had the contract been performed. It is not intended that he shall profit by

68 MICH.—21.

the breach, and receive compensation for injuries that he has not suffered."

When a claim is made for damages arising from breach of contract, and evidence is offered to show loss of profits which might have been realized from a performance of the contract, the question to be determined is whether the damages claimed are too conjectural, speculative, or contingent to form a safe basis for estimating the damages. When the contract is executory, and the time of performance has expired, and the elements out of which the profits were to arise can be ascertained and proved with reasonable certainty, and especially where the compensation for performance is fixed by the agreement of the parties, there is no reason why the difference between the cost of performance and compensation agreed upon should not be recovered as actual damages suffered by the aggrieved party, whether they be called gains prevented or loss of profits. Such damages are the direct consequences of the breach of the contract, and courts have always allowed them. *Atkinson v. Morse, supra; Goodrich v. Hubbard*, 51 Mich. 62 (16 N. W. Rep. 232); *Loud v. Campbell*, 26 Id. 239; *Burrell v. Salt Co.*, 14 Id. 34; *White v. Moseley*, 8 Pick. 356; *Holden v. Lake Co.*, 53 N. H. 552; *Masterton v. Mayor of Brooklyn*, 7 Hill, 61; *P., W. & B. R. R. Co. v. Howard*, 13 How. 307; *Waters v. Towers*, 20 Eng. Law & Eq. 410. See 1 Suth. Dam. 117, 118, and note 1, where the authorities are collected.

The declaration alleged a good cause of action, and the proof offered would have entitled the plaintiff to recover. It is a mistake to suppose that saw-mill owners are without the protection of the law, or that their business is so hazardous and uncertain that parties dealing with them can violate their contracts with impunity. Like others, they can recover actual damages arising from a breach of contract.

The court should have heard the case, and if, after the testimony was introduced, it was too conjectural, uncertain, or

contingent to form a proper basis for recovery, he could then have taken the case from the jury.

It is not good practice to decide a case upon the opening of counsel, and the cases are exceptional where it can be safely done.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.