RUSK MANUFACTURING CO. *v.* JOHN D. MERSHON
LUMBER CO.

1. SALES—ACCEPTANCE OF GOODS—STORAGE OF REJECTED LUMBER.
   Unloading and storage of carload of dimension lumber, to be used for particular purpose as indicated by specifications in order for delivery to vendee's customer, was not in itself acceptance of said lumber which had been previously rejected as not conforming to order (2 Comp. Laws 1929, §§ 9443, subd. (3), 9487).

2. TRIAL—QUESTION FOR JURY—ACCEPTANCE OF REJECTED LUMBER.
   Presentation of question of acceptance to jury was most favorable view of case for seller where vendee rejected carload of dimension lumber as not in conformity with order upon receipt of notice from its purchaser, and, pending requested instructions from seller, ordered it unloaded and stored, offered to have it reloaded and returned to seller, and made other efforts looking toward disposal of lumber or adjustment of differences.

Appeal from Saginaw; Martin (William H.), J. Submitted January 3, 1934. (Docket No. 18, Calendar No. 37,508.) Decided March 6, 1934.

Assumpsit by Rusk Manufacturing Company, a Wisconsin corporation, against John D. Mershon Lumber Company, a Michigan corporation, to recover contract price of lumber. Defendant claimed, by way of set-off and recoupment, amount of freight bill and interest. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Pierson & Karls,* for plaintiff.

*George Grant* and *O'Keefe & O'Keefe,* for defendant.

Nelson Sharpe, C. J.  On September 29, 1931, the defendant, engaged in business at the city of Saginaw, sent to the plaintiff at Shawano, Wisconsin, a written order for certain dimension lumber, to be shipped to it at Hooksett, New Hampshire, which was accepted in writing by plaintiff by letter dated October 1, 1931.  The plaintiff manufactured and shipped the lumber.  On its arrival at its destination, and while still loaded, it was examined by the customer to whom defendant was selling it and defendant notified that it did not comply with the order given.  Defendant, by night letter dated October 22d, so informed plaintiff and asked what it should do with it.  The plaintiff replied on the following day, saying that the stock was furnished "as per order. * * * Cannot tolerate complaint."  Before receiving this message, the defendant had written plaintiff, confirming its notice of rejection and advising it that it had given instructions to unload the lumber.  It was unloaded and stored in the warehouse of the Emerson Toy & Chair Company at Hooksett, and the freight including interest, amounting to $350.70, was paid by the defendant.

Much correspondence followed.  Some samples of the lumber were sent to plaintiff.  No settlement having been arrived at, the plaintiff brought this action on June 24, 1932, to recover the contract price, $1,053.30, and interest thereon.  The defendant in its answer denied liability, alleged that the lumber did not conform to the terms of the contract, and by way of set-off and recoupment claimed judgment for the amount of the freight bill paid by it and interest thereon.  The jury found for the defendant, and from the judgment entered thereon the plaintiff has taken this appeal.

The serious question presented and urged by the plaintiff's counsel is whether "The defendant by its conduct as a matter of law accepted the lumber involved in the contract between the parties." This claim is based upon the following facts: that, after sending the telegram of October 22d, and before receiving a reply, defendant wrote the plaintiff confirming the telegram and advising that it was directing its customer to unload the car; that it was so unloaded and that samples were taken therefrom and sent to defendant at Saginaw and used for exhibits on the trial of the case. It also appears that defendant's eastern representative had asked the manager of the company for whom the lumber had been ordered to endeavor to get an offer for it and submit it to the company. John D. Mershon, defendant's president, testified that "We looked around to see if we could interest anyone, but was not able to do it."

At that time the lumber was stored in Hooksett, New Hampshire. Defendant's place of business was in Saginaw, Michigan, and plaintiff's in Shawano, Wisconsin. The correspondence which passed between them related to the quality of the lumber shipped; defendant insisting that it had rejected it because not in compliance with the order therefor, and plaintiff insisting that it fully complied therewith. In several of the letters defendant offered to have the lumber reloaded and shipped back to plaintiff. Its efforts to reconcile the differences existing is well illustrated by its letter to the plaintiff of December 19, 1931, in which it stated:

"We are just as anxious to get this car of rejected chair stock settled up as you are to have it settled. If you had shipped stock in accordance with our order, you would have had your money

long ago. Our customer claims he cannot use the stock at all, and if you wish, we can have the stock reloaded and shipped back to you. However, that would be expensive and what we are trying to do is to make some sort of an adjustment with our customer that will let you and ourselves out with the least possible loss. We have tried our best to get a proposition from our customer but he procrastinates for one reason or another. We are after this matter vigorously and will keep you advised of any new developments.''

It sought to avoid the litigation which was threatened by the plaintiff, but at no time in any of its correspondence did it recede from its action in rejecting the shipment for the reason stated in its message of October 22d and letter confirming the same. As bearing thereon, it appears that many letters passed between the parties following the telegram of rejection, and that in none of its letters was any claim made by the plaintiff that the defendant by its acts and conduct had accepted the shipment. The sole question in dispute was whether the lumber shipped complied with the terms of the order. In its amended declaration, plaintiff made no claim of acceptance, and the question was first raised in the pleadings in plaintiff's reply to defendant's answer, in which it had stated that in all its correspondence it had insisted that it refused to accept the lumber for the reason above given.

Counsel for both parties seem to concede that our uniform sales act (2 Comp. Laws 1929, § 9440 *et seq.*) is controlling on the question of acceptance. The following sections are applicable thereto:

"There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods expresses by words or conduct his assent to becoming the owner of those

specific goods.'' 2 Comp. Laws 1929, § 9443, subd. (3).

''The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after a lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them.'' 2 Comp. Laws 1929, § 9487.

The trial court submitted this question to the jury in the following instruction:

''If you find that after the receipt of the shipment of the dimension lumber, the defendant, John D. Mershon Lumber Company, did any act in relation thereto which was inconsistent with the ownership of this plaintiff, then your verdict will be in favor of the plaintiff.''

The rule of law is well settled in this State that ''where, after rejection, the buyer conducts himself toward the goods in a manner inconsistent with the rejection or with the seller's absolute ownership of the property, he waives the rejection.'' *Matchless Electric Co.* v. *Morley Brothers,* 252 Mich. 144, 147.

The unloading and storage of the lumber was not in itself an acceptance.

In *Philadelphia Whiting Co.* v. *Detroit White Lead Works,* 58 Mich. 29, it was held (syllabus):

''If one who ships poorer goods than are ordered does not notify his customer of their inferiority he must stand the reasonable and necessary expense of testing them and then of storing them to await the vendor's orders; and these expenses may properly include insurance, freight and cartage.''

''Thus, where, after rejection of the goods, the buyer retains or stores them, subject to the seller's orders, there is no acceptance.'' 55 C. J. p. 501.

See, also, 23 R. C. L. p. 1436.

In its telegram sent plaintiff on October 22d the defendant clearly rejected the lumber shipped to it, and asked plaintiff, "What shall we do with it?" Its after conduct in relation thereto must be viewed in the light of the conditions then existing. The plaintiff, on the order of the defendant, had shipped the carload of dimension lumber, to be used for particular purposes as indicated by the specifications in the order, to the defendant at Hooksett, but, as plaintiff knew, for delivery to a customer of the defendant. Hooksett was so far distant that neither the plaintiff nor the defendant could, within a reasonable time, investigate the complaint made that it was unfit for use for the purpose for which it had been ordered. Defendant was doubtless hopeful that some adjustment might be had, and, to prevent the accumulation of demurrage charges, it ordered the lumber to be unloaded and stored, and so informed plaintiff. It was anxious to avoid litigation, and to that end made some effort to find a purchaser for the lumber. But it was at all times insistent that it had refused acceptance, and this fact was well known to the plaintiff. In our opinion, the most favorable view for the plaintiff which can be taken of these acts on the part of the defendant is that a question of fact was presented thereby for the jury to pass upon and it found for the defendant.

The judgment is affirmed.

Potter, North, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.