VALLEY DIE CAST CORP. *v.* A.C.W., INC.

1. SALES—RESCISSION—FRAUD—DAMAGES.

Buyer's acceptance or rejection of plaintiff seller's car wash system was immaterial where defendant's counterclaim, based on theories of fraud and breach of implied warranties of merchantability and fitness of purpose, entitled him to damages regardless of rescission of the contract or acceptance of the goods, and court properly left resolution of damages to the jury under proper instructions regarding theories of rescission, fraud, and breach of warranties.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–10] Construction and effect of UCC Art 2, dealing with sales. 17 ALR3d 1010.

[1] 46 Am Jur, Sales §§ 723, 724.

[2] 46 Am Jur, Sales §§ 252, 756, 765.
Purchaser's use or attempted use of articles known to be defective as affecting damages recoverable for breach of warranty. 33 ALR2d 511.
Use of article by buyer as waiver of right to rescind for fraud, breach of warranty, or failure of goods to comply with contract. 41 ALR2d 1173.

[3] 46 Am Jur, Sales § 260.
Purchaser's use or attempted use of articles known to be defective as affecting damages recoverable for breach of warranty. 33 ALR2d 511.

[6] 46 Am Jur, Sales §§ 666, 668.

[7] 46 Am Jur 2d, Sales § 756.
Purchaser's use or attempted use of articles known to be defective as affecting damages recoverable for breach of warranty. 33 ALR2d 511.

[8] 46 Am Jur, Sales § 743.

[10] 46 Am Jur, Sales §§ 743, 745.

2. Sales — Commercial Units — Buyer's Acceptance — Damages — Utilization of Equipment — Mitigating Damages.

Utilization of plaintiff's equipment before replacement machinery was secured and utilization of usable units after obtaining replacement machinery did not constitute acceptance of the seller's commercial unit and was necessary for the buyer in order to mitigate damages under the rule that a person suffering damages from breach of contract involving a purchase of machinery must do what is reasonably necessary to minimize damages.

3. Sales—Commercial Units—Acceptance of Goods—Rejection—Replacement System.

The Uniform Commercial Code allows a buyer to accept any commercial unit or units and reject the rest so that where defendant utilized a portion of plaintiff's car wash system both before and after acquiring a replacement system from another seller, it was for the jury to determine not only whether buyer retained a commercial unit but also the ultimate fact of whether defendant accepted or rejected the goods.

4. Sales—Acceptance of Goods—Tax—Depreciation.

Taking of tax depreciation for two years on the value of seller's equipment did not amount to acceptance of the equipment by the defendant as a matter of law, because the taking of depreciation was a proper accounting practice.

5. Sales—Acceptance of Goods—Breach of Warranty—Damages.

Contention by seller that defendant had accepted plaintiff's equipment and could only recover damages for breach of warranty was untenable, because the contention was based upon the erroneous assumption that defendant, as a matter of law, had accepted the equipment, when the question of defendant's acceptance was in fact for the jury to decide.

6. Sales — Defective Equipment — Renovation Costs — Question For Jury.

Renovation costs should be included in the award of damages to defendant buyer as a proximate result of the failure of seller's equipment to function properly, where the question was one of fact for the jury and there were sufficient proofs to enable the jury to make that determination.

7. Contracts — Damages — Loss of Profits — Reasonable Certainty.

Loss of profits is a proper element of damages in a contract or a tort case where they are neither uncertain nor speculative and can be traced with reasonable certainty to the breach of the contract, and no error resulted where the jury's resolution of this question was confined to the measure of damages controlled by reasonably certain and non-speculative evidence.

8. Sales—Right to Cover—Reasonableness.

Rejection of buyer car wash operator's offer of proof that he had "covered" by installing a brush wash system in place of plaintiff seller's pressure wash system was not an abuse of discretion where the replacement system was more expensive than the plaintiff's system and operated on an entirely different principal.

9. Profits—Loss of Profits—Speculativeness.

Evidence of profits made after defendant installed replacement machinery was properly excluded as a basis for determining the amount of profits which would have been made with the plaintiff's system where the replacement system was entirely different in operation from the system installed by plaintiff, the replacement system was installed some nine months after defendant had originally entered the car wash business, the replacement system was operated as a part of an established business and not as part of a beginning business, and the expertise and management experience which defendant now possessed was absent before the installation of the replacement system, where such proofs of loss of profits are purely speculative and cannot be traced with reasonable certainty to a breach of contract.

Appeal from Macomb, James E. Spier, J. Submitted Division 2 March 9, 1970, at Detroit. (Docket No. 6,786.) Decided July 27, 1970.

Complaint by Valley Die Cast Corporation against A.C.W., Inc., to recover balance on a promissory note. Counterclaim for fraud and for breach of implied warranties. Judgment for defendant on counterclaim. Plaintiff appeals. Defendant cross-appeals. Affirmed.

*William Murray,* for plaintiff.

*Fischer, Sprague, Franklin & Ford (George H. Meyer, Leon R. Jones,* and *Francis E. Bentley,* of counsel), for defendant.

Before: T. M. BURNS, P. J. and HOLBROOK and BRONSON, JJ.

HOLBROOK, J. Plaintiff, Valley Die Cast Corporation, manufacturer, in July 1966, sold to defendant, A. C. W., Inc., a "Thrift-I-Matic" pressure car wash system. Defendant executed a promissory note for the purchase in favor of plaintiff. Defendant had several difficulties in operating the pressure car wash system and, finally, in January 1967, gave notice to plaintiff of rejection of the purchase because of defects in the equipment. Plaintiff thereupon brought suit on the promissory note on January 20, 1967, against defendant claiming a balance due of $14,749.28.

Defendant claimed the affirmative defenses of failure of consideration and fraud, and filed a counterclaim for damages based on fraud and breach of the implied warranties of merchantability and fitness of purpose.

After a trial in the circuit court before a jury, a verdict of $9,000 was returned in favor of defendant on its counterclaim, and judgment was entered on October 28, 1968. Upon denial of plaintiff's motion for judgment notwithstanding the verdict, plaintiff appealed. Defendant has cross-appealed.

In 1965, Paul Stafford became interested in the car wash business as an investment. In January 1966, after learning that plaintiff was the manufacturer of a car wash system, Stafford arranged to talk with Willam Alkire, sales manager of plaintiff cor-

poration. He was shown a working model of a car wash system which was allegedly different from and inferior to the newer stationary model he subsequently purchased. The sales brochure which he was given explained the operation of the new system, emphasized its dependability and profitability as an investment, and represented that it would wash cars "sparkling clean".

During preliminary sales conversations, Stafford represented to Alkire that he knew nothing about the car wash business. Stafford, his father, and his uncle invested in the purchase from plaintiff of its car wash system and, together with their wives, organized the defendant corporation. A purchase agreement was executed by Stafford, president of the corporation, on January 18, 1966, as a part of which a deposit of $1,000 was made to plaintiff by certified check. The purchase agreement included a stationary car wash system for $16,950, a rinse unit for $1,950, and a blower-dryer for $4,800, with a total price of $24,448. Because plaintiff was unable to deliver a blower-dryer as ordered, defendant secured one from another source. The price of plaintiff's blower-dryer was deducted from the total price of the sale. A building was constructed to accommodate plaintiff's system, built pursuant to plans prepared by plaintiff, costing defendant $26,000.

On July 13, 1966, defendant executed a note for $15,802.80, the balance of the purchase price, and a security agreement providing for payment on September 1, 1966, and every month thereafter, of $263.38 until the full sum was paid. At the time suit was commenced, defendant had made five payments pursuant to the note, through January 1967 and was not in default.

The equipment was delivered to defendant's completed building on July 15, 1966. Several of plain-

tiff's employees assisted the building contractor in installing its system, together with the blower-dryer and an additional wax tower, purchased elsewhere. Defendant gave a certified check for $6,500, representing the balance of the down payment.

Installation of the equipment was completed on July 30, 1966. Plaintiff's employees checked and tested the equipment, following which defendant opened for business in early September 1966.

Stafford and his father testified that the equipment never ran right, and that by October 1966 it became necessary to wash cars by hand, forcing defendant to employ extra help. Defendant introduced into evidence several exhibits, consisting of invoices from plaintiff's records, reflecting repairs to the system made between October 1966 and March 1967. Stafford testified as to other occasions, as shown in a notebook he kept, when problems were encountered which necessitated repairs. Plaintiff admitted some complaints and accompanying service calls of which no written records were kept; that the complaints concerned all parts of the equipment; and that similar complaints were received by plaintiff concerning others of its installed units.

Plaintiff claimed that any failure of its machinery to function properly was the result of faulty installation and failure to operate the equipment in accordance with its maintenance and service manual. Plaintiff's proofs did not show any particular manner in which defendant improperly operated or maintained the equipment, but did disclose that the location of the blower-dryer interfered with the wash pattern, which an expert witness for defendant denied. Testimony revealed that the equipment, as installed, was considered satisfactory by plaintiff's employees.

On November 30 and December 30, 1966, defendant, *per* Paul Stafford, forwarded to plaintiff the December 1966 and January 1967 payments, respectively, on its note, with accompanying letters advising that the equipment did not work properly and that payment was not intended as a waiver of defendant's legal rights.

On January 10, 1967, defendant notified plaintiff by letter of its rejection of the auto wash equipment, claiming breach of warranties, demanding that plaintiff remove its equipment and pay to defendant $11,943.90 ($8,816.90 in payments under the contract, and $3,127 installation cost) in discharge of defendant's security interest in the equipment, and giving notice of defendant's intention to resell the equipment should plaintiff fail to remove the same and discharge defendant's security interest therein by 5 p.m. January 20, 1967.

Stafford continued to use plaintiff's system until brush equipment, ordered from another source, was delivered on May 16, 1967, and also continued to request and receive necessary service from plaintiff on its equipment. On May 12, 1967, defendant wrote plaintiff that it was in the process of acquiring new auto wash equipment and removing and storing that of plaintiff's with the exception of a boiler, pump, and sign, which defendant was able to retain and use.

Plaintiff raises four issues on appeal as follows:

(1) *Did defendant accept the merchandise sold to it as a matter of law?*

(2) *Is defendant entitled to recover the payments made on the equipment?*

(3) *Is defendant entitled to recover the costs of renovation?*

(4) *Is defendant entitled to any damages for loss of profits?*

Defendant, in its cross-appeal, raises the following two additional issues:

(5) *Did the trial court commit error in refusing to allow defendant to recover damages for cost of "cover"?*

(6) *Did the trial court commit error in excluding from the jury proofs offered by defendant bearing upon the amount of profits it lost as the result of plaintiff's misconduct?*

I

Plaintiff contends that defendant did not rescind but, rather, accepted plaintiff's system as a matter of law, and, in this regard, refers to certain acts of defendant which it claims were inconsistent with plaintiff's ownership of the equipment, *viz.:* defendant's continued use of all of the equipment after January 10, 1967, until May 12, 1967; its use thereafter of a part of a "commercial unit" up to the trial of the case and its requests for service after January 10, 1967; and defendant's act of taking depreciation on the equipment through August 31, 1967. In support of its position, plaintiff cites § 2–606 of the Uniform Commercial Code, MCLA § 440.2606 (Stat Ann 1964 Rev § 19.2606) which states in part:

"Acceptance of goods occurs when the buyer

\*   \*   \*

"(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

"(2) Acceptance of a part of any commercial unit is acceptance of that entire unit."

Defendant pleaded as counterclaims fraud and breach of warranties. GCR 1963, 111.9(2), 203.2. Defendant maintains that it is immaterial whether it accepted or rejected plaintiff's equipment since,

regardless of rescission, one who has been defrauded is entitled to damages, and, therefore, whether it rescinded or accepted plaintiff's goods and proved fraud and/or breach of warranties, damages could be recovered.

That the remedy of rescission is not exclusive is shown in *Elson* v. *Harris* (1959), 356 Mich 175, wherein the Court stated at p 178:

"Citing authority from other jurisdictions, plaintiff insists (she emphasizes that this is a suit for damages—not one for rescission) that the right of action remains intact and that she had a right to affirm and sue, on discovery of the fraud as found by the jury, and that the remedy of rescission is by no means exclusive.

"We are constrained to agree with plaintiff."

The trial court, in its charge to the jury, correctly instructed as to the nature of rescission, fraud and breach of warranty. See 10 Callaghan's Michigan Civil Jurisprudence, Fraud and Undue Influence, § 3, p 391; MCLA §§ 440.2314, 440.2315 (Stat Ann 1964 Rev §§ 19.2314, 19.2315).

Defendant is correct in its contention that the remedy of rescission is not exclusive and that the trial court, under proper instructions, properly left the resolution of the question of damages, under theories of rescission, fraud, and breach of warranties to the jury.

It is defendant's position that utilization of plaintiff's equipment before replacement machinery was secured, and utilization of the usable units of the system after replacement, was necessary to mitigate damages, and was limited to "commercial units". In regard to the units of plaintiff's system which defendant retained, Donald Bloink, president of the company from which defendant purchased the substitute brush equipment, testified in part:

"*Q.* What is the value, market value of that property that he retained?

"*The Court:* At that time?

"*A.* I can't give you the market value of the particular pieces that he kept because I don't know the value of Valley Die Cast—I can give you a value on replacement pieces of equipment which we sell.

"*Q.* Is that exactly the same thing?

"*A.* Yes, with similar equipment.

"*Q.* The same type of equipment?

"*A.* It's similar. I put a power pack in my own place and I have sold many others.

"*Q.* What would have been the charge for that in May of 1967?

"*A.* $4,450 with the meter, the power wash and electrical control."

Plaintiff's manufacturing manager also testified that parts of the system purchased by defendant were available as optional equipment and stated the prices at which the same could be purchased from plaintiff. The case of *Blumrosen* v. *Silver Flame Industries, Inc.* (1952), 334 Mich 441, cited by plaintiff is distinguishable, for there no showing was made of the cost attributable to the portion of the merchandise retained by the purchaser.

We conclude that defendant was correct in its position concerning mitigation of damages and turn to 7 Callaghan's Michigan Civil Jurisprudence, Damages, § 111, p 372 wherein it is stated:

"Contracts involving the purchase or installation of machinery for particular purposes are within the rule that persons suffering damages from breach of contract either with respect to the type, capacity or condition of the machine or machinery must do what is reasonably necessary to minimize damages."

Also, see 25 CJS, Damages, § 34, pp 704, 708, 709.

Defendant's assertion that that portion of plaintiff's system which it utilized prior to acquisition of,

and in conjunction with, the replacement brush system, could be found by a jury to be a "commercial unit", refers to MCLA § 440.2601 (Stat Ann 1964 Rev § 19.2601) which allows a buyer to "accept any commercial unit or units and reject the rest." A "commercial unit" is defined in MCLA § 440.2105 (Stat Ann 1964 Rev § 19.2105) as "a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use. A commercial unit may be a single article (as a machine) or a set of articles  *  *  *  or a quantity  *  *  *  or any other unit treated in use or in the relevant market as a single whole." Testimony revealed that in addition to retaining plaintiff's sign, of a value of $400, which was available from plaintiff as optional equipment, the other items retained by defendant were collectively known as a "power pack" unit, suitable for use with both a brush and pressure system, and which was also available separately as optional equipment.

We conclude that defendant is correct, that the existence of acts tending to show an acceptance or rejection of goods as well as the ultimate fact of acceptance or rejection are, under the facts in this case, for the jury to determine. *Elco Shoe Manufacturers* v. *Thatcher* (1925), 231 Mich 138; *Rusk Manufacturing Co.* v. *John D. Mershon Lumber Co.* (1934), 266 Mich 99.

Plaintiff claims that the taking of depreciation by defendant upon the value of plaintiff's equipment for the years ending August 31, 1966 and 1967, for tax purposes, considered in conjunction with other actions by defendant in regard to the equipment, amounted to an acceptance by defendant of the equipment as a matter of law. We rule that this contention is governed by the foregoing authority,

in view of the uncontradicted testimony by defendant's accountant that the use of depreciation was a proper accounting practice.

## II

Plaintiff contends that defendant, having accepted plaintiff's equipment as a matter of law, could only recover, if at all, upon the basis of the Uniform Commercial Code, § 2–714, MCLA § 440.2714 (Stat Ann 1964 Rev § 19.2714), damages for breach of warranty, consisting of the difference at the time and place of acceptance between the value of the goods accepted and the value which they would have had if they had been as warranted unless, as a result of special circumstances, proximate damages of a different amount are shown. Plaintiff's position is untenable because it is grounded upon the erroneous assumption that defendant accepted the equipment as a matter of law. We have ruled that this issue was one of fact for the jury.

Defendant asserts that a buyer may recover his consideration from the seller if he rescinds. See, *Westman* v. *Brumm* (1929), 248 Mich 387; *Lash* v. *Prokop* (1951), 331 Mich 390, 396. If he affirms he may recover, as damages, the difference between the actual value of the goods and the value they would have had if they had been as warranted, either on a theory of breach of warranties, MCLA § 440.2714 (Stat Ann 1964 Rev § 19.2714); or on a theory of fraud. See *Lash* v. *Prokop, supra,* and *D'Alessandro* v. *Vander Hooning* (1961), 365 Mich 66, which support defendant's claim.

Defendant had, at the time of commencement of suit, paid to plaintiff a total of $8,816.90, with payments current at the time plaintiff commenced the present action. The jury, under proper instructions,

returned a verdict for defendant in the amount of $9,000.

Questions of fact, having been decided by a jury, provide no ground for reversal unless there is substantial error. *Krajewski* v. *Bommarito* (1969), 16 Mich App 196. We rule that there was no substantial error committed.

## III

Plaintiff, citing § 2–715 of the Uniform Commercial Code, dealing with incidental and consequential damages resulting from a seller's breach, MCLA § 440.2715 (Stat Ann 1964 Rev § 19.2715), contends that the costs allegedly incurred by defendant in renovating its building to accommodate the substitute brush system, including $1,300 as the cost of electrical work to install the brush unit in its building, and $6,519.62 as the amount paid to Center Line Construction Incorporated for renovation of the building, are not recoverable. Plaintiff claims that, there being no special circumstances known to the seller when it entered into the contract which would distinguish the contract here involved from other contracts of the same kind, and no proof of actual damages, recovery of damages includes only such as would result from the natural and usual course of things, *Huler* v. *Nasser* (1948), 322 Mich 1, 8.

The testimony revealed that the building, as originally built to accommodate plaintiff's equipment, was constructed by Center Line Construction Incorporated for $26,000. Peter Cedroni, president of Center Line Construction Company, testified that if he had originally constructed defendant's building to house the brush equipment, he would have done the same work with the exception of replacing the concrete floor. Defendant's proofs included an item-

ized statement of renovation costs, showing a total cost of $6,519.62.

Defendant, citing 22 Am Jur 2d, Damages, § 56, pp 86, 87,* asserts that renovation costs were within the contemplation of the parties, inasmuch as plaintiff should have known that if its system failed to perform properly defendant would have to install a system which would wash cars clean, requiring a modification of the building to house a substitute system; that, in any event, the costs of renovation proximately resulted from the failure of performance of the equipment, which plaintiff had reason to know had been purchased for a particular purpose, *i.e.*, that of washing cars clean, citing § 2–715 of the Uniform Commercial Code, MCLA § 440.2715 (Stat Ann 1964 Rev § 19.2715), and *American Vitrified Products Company* v. *Wyer* (CA6, 1955), 221 F2d 447. We are convinced that the record contained sufficient proofs to enable the jury to determine whether renovation costs should be included in the award of damages to defendant as a proximate result of the failure of plaintiff's equipment to function properly. There was no substantial error committed by the court in submitting this question of fact to the jury. *Krajewski* v. *Bommarito, supra.*

## IV

Plaintiff contends that defendant cannot properly claim damages for loss of profits based upon plain-

---

* "[T]he damages recoverable for breach of contract are such as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of its breach. * * * Thus, the rule in contract actions is to be distinguished from the rule in tort actions, under which damages may be recovered for all injuries which proximately follow whether or not all such injuries could have been anticipated or contemplated."

tiff's sales brochure, which pointed out that the car wash equipment as sold would wash a car per minute and that by washing the number of cars listed per day and month, the operator could expect to show a profit. Plaintiff relies upon *Allis* v. *McLean* (1882), 48 Mich 428 and *Stevenson* v. *Brotherhoods Mutual Benefit* (1945), 312 Mich 81, in support of its position that the elements that go to make up a successful car wash business are beyond the control of the manufacturer and are too speculative to allow loss of profits as an element of defendant's damages.

Defendant asserts that the question of profits is one of fact for the jury, and that the law of this state is to the effect that loss of profits is a proper element of damages in contract cases, *Atkinson* v. *Morse* (1886), 63 Mich 276, and in tort cases, *Allison* v. *Chandler* (1863), 11 Mich 542. Defendant further contends that the proofs in the instant case established loss with reasonable certainty and, although defendant was not required to establish the amount of loss with absolute certainty, *Callender* v. *Meyers Regulator Co.* (1930), 250 Mich 298, there was mathematical certainty in much of defendant's evidence.

In the case of *Allis* v. *McLean, supra,* it was stated at pp 431, 432:

"But the difficulty in measuring damages by profits is that they are commonly uncertain and speculative, and depend upon so many contingencies that their loss cannot be traced with reasonable certainty to the breach of contract. When that is the case they are said to be too remote; and the damages must be estimated on a consideration of such elements of injury as are more directly and certainly the result of the failure in performance. *But in some cases profits are the best possible measure of damage, for the very reason that the loss is indisputable, and the amount can be estimated with almost absolute certainty.*" (Emphasis supplied.)

The *Atkinson* and *Allison* cases, *supra,* cited by defendant, approve the recovery of damages for loss of profits where, based upon the factual circumstances of a given case, such profits are not subject to mere speculation. In this regard, the *Atkinson* case states as follows at p 281:

"Damages for loss of profits are more frequently allowed to be recovered in cases of tort than contract; but when loss of profits arising from a breach of contract can be proved with a reasonable degree of certainty, and such loss is directly traceable to the breach of the contract, there is no reason why such damages may not be recovered."

We note that the trial court did instruct the jury against speculation as to damages. Although recovery of damages for loss of profits is a close question, resolution of this question was confined to that measure of damages controlled by the evidence which was reasonably certain and not speculative.

## V

Defendant claims that the trial court's ruling that defendant had not "covered", pursuant to §§ 2–711 and 2–712 of the Uniform Commercial Code, MCLA §§ 440.2711, 440.2712 (Stat Ann 1964 Rev §§ 19.2711, 19.2712) by installing a brush wash system in place of plaintiff's pressure system was erroneous and resulted in an insufficient verdict; that the jury should have been allowed to consider evidence of the cost of "cover" which, pursuant to § 2–712, consists of the difference between the cost of the defective pressure equipment and the cost of the replacement brush equipment; and that it was for the jury to determine whether, under the circumstances, defendant acted reasonably. Defendant further argues that the Uniform Commercial Code does not limit

"cover" to identical goods, but requires only good faith, reasonably prompt action, and a reasonable purchase. Defendant concedes that the price of the substituted brush system was $3,328.56 more than that of the pressure system sold by plaintiff, and that the pressure system washed cars while in a stationary position, using high pressure jets of water, while the brush system, using rotating brushes which touched the cars, creating friction, carried cars through the brushes by a conveyor. Defendant states that the important difference was that the brush system washed cars clean, while the pressure system did not.

The trial court, in ruling that defendant had not covered by installing a more expensive brush system, which operated upon a principle entirely different from the pressure system purchased from plaintiff, stated:

"  *  *  *  you put an entirely different system in. If you had gone out and gotten the same system there wouldn't be any question about it."

We rule that the question of admissibility of defendant's offer of evidence of "cover" was one for the court, and that its rejection was not an abuse of discretion but was proper under the facts. 4 CJ, Appeal and Error, § 2785, p 812.

## VI

We deal with the three issues jointly. Defendant contends that the trial court committed error (a) in excluding evidence of profits actually made after installation of the brush wash system, (b) in excluding from the jury's consideration evidence of the volume of business after installation of the brush wash system, and (c) in refusing to permit recovery

for loss of profits sustained after the change over to the brush system.

Defendant asserts that, having made profits after installation of the brush system, it should, by inference, also have made the same profits with use of the pressure system, and that the exclusion of evidence of such profits was error. Reliance is placed upon *Mueller v. The Bethesda Mineral Spring Company* (1891), 88 Mich 390, for the proposition that profits actually made after a party's wrongful act should be considered as evidence of profits lost because of the wrongful act. The *Mueller* case, *supra,* is distinguishable on its facts from the instant case. The *Mueller* case does not support the position taken by defendant herein. In this case it must be noted that the brush wash system was entirely different in operation from the pressure system manufactured by plaintiff; the brush system was installed some nine months after defendant had originally entered into the car wash business, so that that system was operated as a part of what had become an established business, whereas plaintiff's system had been installed as a part of a beginning business; and the experience in management techniques acquired by defendant during the period of operation prior to installation of the brush system was admittedly absent. Such experience would be of untold value to defendant's personnel in their efforts to satisfy the public through the rendering of efficient service.

Under the facts of the present case, we are constrained to follow the rule set forth by the Court in *Hitchcock v. The Supreme Tent of the Knights of the Maccabees of the World* (1894), 100 Mich 40, 47:

" * * * damages which are purely speculative in character, and dependent on so many contingencies that they cannot be traced with reasonable cer-

tainty to the breach of the contract, are not allowable."

Affirmed. No costs, neither party having prevailed as to its appeal.

All concurred.